HENRY BENSON, Respondent, *v.* WILLIAM C. DEAN, Appellant.

*Physicians and surgeons — malpractice — when testimony of laymen may warrant inference of want of care — when failure to correctly diagnose trouble or advise patient to resort to others of wider experience sufficient to sustain charge of malpractice — erroneous instructions to jury.*

1. Ordinarily jurors would find difficulty, without the help of medical evidence, in determining the right of a patient to recover against his physician for malpractice based on lack of scientific skill, but the results may be of such a character as to warrant the inference of want of care from the testimony of laymen in the light of the knowledge and experience of the jurors themselves.

2. Where during the performance of a surgical operation a needle was, broken, and owing to the condition of the patient it was considered advisable to sew up the wound without recovering the point, and thereafter local pain developed, a long continuance thereof without relief under the ministrations of the general practitioner might properly lead him to reveal to his patient the secret of the broken needle and suggest recourse to a specialist, and where he did not diagnose the trouble correctly and did not advise his patient to resort to others of wider experience for help, the jury might properly find that he was guilty of malpractice in this regard, particularly in view of the fact that when an abscess developed at the point of irritation another physician obtained entire relief for plaintiff by a simple operation by which he removed the broken needle.

3. An instruction to the jury that the mere breaking of the needle alone was not necessarily negligence but might be some evidence of negligence was erroneous where plaintiff failed to offer any evidence to rebut defendant's evidence that surgical needles occasionally break, even when the operator uses the highest degree of skill and care.

4. A further charge that if under the circumstances a reasonably careful, skillful general practitioner such as the defendant would have suggested the calling into consultation of a specialist, the defendant was negligent for failing to do so, is too general. The jury might have inferred from the instructions as given that a specialist would have operated without breaking the needle, but the plaintiff's case is barren of evidence on this point and defendant's case strongly suggests the contrary.

*Benson* v. *Dean,* 190 App. Div. 937, reversed.

(Argued October 21, 1921; decided October 28, 1921.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 22, 1920, affirming a judgment in favor of plaintiff entered upon a verdict.

*Edwin A. Jones* for appellant. The exceptions to the charge and to the refusal to charge call for reversal. (*Potter* v. *Warner,* 91 Penn. St. 263; *Jones* v. *Vroom,* 45 Pac. Rep. 234.) No negligence was shown on the part of defendant. The defendant is not responsible for any neglect on the part of Dr. Kasper. There was no

evidence to go to the jury. The complaint should have been dismissed. (*Pike* v. *Honsinger,* 155 N. Y. 201; *Mackenzie* v. *Carman,* 103 App. Div. 246; *Warner* v. *Packer,* 139 App. Div. 207; *Brown* v. *Goffe,* 140 App. Div. 353; *Myers* v. *Holborn,* 58 N. J. L. 193; *Robinson* v. *Crotwell,* 175 Ala. 194; *Morey* v. *Thybo,* 199 Fed. Rep. 760; *Brown* v. *Bennett,* 122 N. W. Rep. 307; *Keller* v. *Lewis,* 65 Ark. 578; *Hitchcock* v. *Burgett,* 38 Mich. 501.)

*Joseph R. Truesdale* and *Edwin A. Falk* for respondent. The charge of the court was a direct statement of the law applying to the case. (*Robinson* v. *Crotwell,* 175 Ala. 194; *Myers* v. *Holborn,* 58 N. J. L. 193; *Brown* v. *Bennett,* 122 N. W. Rep. 305; *Keller* v. *Lewis,* 65 Ark. 578; *Hitchcock* v. *Burgett,* 38 Mich. 501; *Pike* v. *Honsinger,* 155 N. Y. 201; *Mullen* v. *Boynton,* 132 Mass. 433.)

POUND, J. This is an action against a physician and surgeon to recover damages for failure to use reasonable skill, judgment, care and diligence in treating a patient. The plaintiff had been suffering from rectal trouble. He consulted the defendant who examined him, recommended an operation for ulcers and in March, 1916, operated under a general anæsthetic at a private hospital, with the assistance of Dr. Blaise who gave the anæsthetic and Dr. Kasper, a specialist in general surgery. After making progress, while sewing up one incision or wound, Dr. Kasper's needle broke. The defendant and Dr. Kasper probed to locate the part of the needle that had broken off, but failing to find it, completed the operation, leaving the broken part of the needle behind. Plaintiff was not taking the anæsthetic well and it was necessary to act with haste. The defendant did not tell the plaintiff, his family or friends about this needle. The plaintiff remained in the hospital for about two weeks and was thereafter in his house for four or five weeks. When he returned to work, he had to stop at

times and go home because of pain in the rectum. He continued to consult the defendant who continued to treat him from the time of the operation in March, 1916, to January, 1917. During this entire period he suffered intensely. In January, 1917, defendant again took him to a hospital and put him under an anæsthetic, but he then merely burned some small rectal ulcers with nitrate of silver. The pain and discharge continued. The defendant had prescribed an irrigation treatment, which was extremely painful. At times he put a rubber covering over his finger and inserted it in plaintiff's rectum. Whenever the irrigating tube or the finger touched a certain spot plaintiff felt severe pain. After he returned from the hospital the defendant continued to attend him, still causing severe pain when he touched the tender spot. This treatment continued until the summer and fall of 1917. No suggestion was made to plaintiff that the advice of a specialist in such troubles should be sought. A lump finally formed in the wall of the rectum and when plaintiff called the defendant's attention to it, defendant said he would have to be operated on again. Then the plaintiff ceased going to the defendant and went to Dr. Saphir, a rectal specialist, who treated him and operated on him, opening an abscess at the tender spot and removing therefrom the broken needle. Plaintiff remained in the hospital for three days, was treated by Dr. Saphir at his office for some weeks and was then cured of all discharge and pain and has had no trouble since.

The facts are not disputed in any material way.

The first question of law is whether plaintiff established defendant's legal liability. Defendant contends that on the undisputed evidence he used a proper degree of professional skill and judgment and that he was not responsible for the bad result. A physician is bound only to have and to exercise competent skill in treating a patient. (*Pike* v. *Honsinger*, 155 N. Y. 201.)

Plaintiff sought to establish his case without the aid

of medical experts. His theory seems to have been that the lack of skill or want of care was so obvious from the history of the case that expert testimony was unnecessary; that the loss of a portion of the needle in an operation coupled with a bad result, standing alone, is evidence of unskillful surgery. Ordinarily, jurors would find difficulty, without the help of medical evidence, in determining the right of a patient to recover against his physician for malpractice based on lack of scientific skill, but the results may be of such a character as to warrant the inference of want of care from the testimony of laymen or in the light of the knowledge and experience of the jurors themselves. (*Leighton* v. *Sargent*, 31 N. H. 119; *Evans* v. *Roberts*, 172 Iowa, 653; *Wharton* v. *Warner*, 75 Wash. 470.)

The history of the case may be divided into two parts: *First*, the operation itself with the incidents of the broken needle, the failure to find the portion that remained in the rectum and the act of leaving the needle and sewing up the wound; and *second*, the subsequent treatment of plaintiff by defendant for rectal ulcers, covering a period of about twenty months, when the symptoms might be found to be attributable to the presence of the needle. As to the first branch of the case the uncontradicted evidence shows that, with the utmost care, surgical needles sometimes break and the broken part sometimes escapes detection in the course of an operation; that the proper course of treatment in such an emergency in a case like the one under consideration suggests that, rather than to subject the patient to the dangers incident upon further cutting under an anæsthetic, the surgeon should leave the foreign substance in the body and await later manifestations.

The presence of the needle in the body is, however, an element of danger. With good fortune it may work its way to the surface and may be removed without causing trouble, but it may become a source of

irritation and may develop an abscess. Wounds in the rectum are peculiarly subject to infection. The localized pain in this case might have suggested to a careful physician the cause of the patient's suffering. A long continuance thereof without relief under the ministrations of the general practitioner might properly lead him to reveal to his patient the secret of the broken needle and suggest recourse to a specialist in rectal disorders. Defendant did not diagnose the trouble correctly and did not advise his patient to resort to others of wider experience for help. The jury might properly find that he was guilty of malpractice in this regard, particularly in view of the fact that when the abscess developed at the point of irritation Dr. Saphir promptly obtained entire relief for plaintiff by a simple operation by which he removed the broken needle and established the fact that the ulcers were not the producing cause of the pain. Defendant's fault seems to have been the unworthy and unskillful attempt to cover up the accident rather than the accident itself and the jury might well have found that the failure of defendant to treat plaintiff properly unnecessarily prolonged and increased his pain and suffering.

A question of proper skill and care was thus presented for the consideration of the jury and the judgment entered on their verdict would be upheld except for errors in the charge of the court, which were clearly prejudicial in view of the fact that plaintiff called no medical experts to testify what constituted proper treatment.

The court instructed the jury over defendant's exception that the mere breaking of the needle alone was not necessarily negligence, but might be some evidence of negligence. The plaintiff failed to offer any evidence to rebut defendant's evidence that surgical needles occasionally break, even when the operator uses the highest degree of skill and care. The evidence of the

first operation coupled with the presence of the broken needle in the abscess standing by itself might have suggested that proper care had not been taken and might have been enough to put defendant to his proof. (*Goldstein* v. *Pullman Co.*, 220 N. Y. 549, 554.) Common sense suggests that the condition discovered by Dr. Saphir was incompatible with successful surgery and medical treatment. But when the evidence of the defendant's surgeons came into the case with a reasonable explanation showing what may happen when the proper degree of care and skill is actually exercised, the possible inference of negligence from the breaking of the needle alone was driven out and the jury should have been so instructed. The rule *res ipsa loquitur* put upon the defendant the burden of going on with the case (*Davis* v. *Kerr*, 239 Penn. St. 351), but in the absence of medical evidence to the contrary, it must be assumed on this appeal that the breaking of the needle was not due to negligence.

The court further charged, over defendant's exception, at the request of plaintiff's counsel that " if under the circumstances a reasonably careful skillful general practitioner such as the defendant would have suggested the calling into consultation of a rectum specialist, the defendant was negligent for failing to do so."

No evidence was offered as to this element of negligence and it came into the case, if at all, only after the operation. (*Mallen* v. *Boynton*, 132 Mass. 443.) The evidence does not suggest that such a specialist should have been called in for the operation. On the record, defendant and his assistants were competent to operate and operated with judgment. A jury might say that at some time in the subsequent treatment defendant should, in the exercise of reasonable care, diligence and good judgment, have sought, or at least suggested, counsel when he failed to afford plaintiff any substantial relief from the extreme of agony which he suffered. To a man of skill,

the localized pain might have been a warning of the presence of the broken needle at the sensitive spot. If a general practitioner has reason to doubt, and under the circumstances should doubt, whether he has the competent skill and experience to handle the case himself, the question arises whether good judgment does not require him to advise his patient to consult another more skillful surgeon. But the charge as made was too general. The jury might have inferred from the instructions as given that a specialist would have operated without breaking the needle. Such may indeed be the fact, but plaintiff's case is barren of evidence on this point and defendant's case strongly suggests the contrary possibility.

It follows that the judgment should be reversed and a new trial granted, with costs to abide the event.

HOGAN, CARDOZO, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur; HISCOCK, Ch. J., absent.

Judgment reversed, etc.