S.C. SYVERUD, D.C. Chiropractic Examining Board
You ask whether a physician has authority under the Medical Practices Act to counsel a patient on whether or not continued chiropractic professional care is necessary. My answer is yes, subject to the qualifications set forth below.
It is generally recognized that, absent specific limits drawn by the Legislature,
 A person holding a license or certificate to practice medicine and surgery, or to treat human diseases generally, has unlimited authority to prescribe for and treat the sick and afflicted, practice the profession in all its branches, and use any method or system of treatment or healing he may choose. *Page 317 
70 C.J.S. Physicians and Surgeons sec. 15 (b). In Wisconsin, a physician's authority to practice medicine and surgery is broadly defined by the Legislature to include authority "[t]o examine into the fact, condition or cause of human health or disease, or to treat, operate, prescribe or advise for the same by any means or instrumentality." Sec. 448.01 (9)(a), Stats. This grant of authority appears particularly broad in view of the fact that the Legislature has demonstrated its ability to impose specific limitations on other medical professions. See sec. 448.01 (4), (8), Stats. As Justice Currie pointed out in State v. Grayson,5 Wis.2d 203, 206, 92 N.W.2d 272 (1958):
 Sec. 147.14, Stats., prohibits any person from treating the sick who does not hold a license or certificate of registration from the state board of medical examiners, "except as otherwise specifically provided by statute." By sec. 147.23 the legislature has provided for the licensing of chiropractors. It thereby necessarily follows that chiropractors so licensed are authorized to treat the sick only to the extent authorized by their chiropractic license.
It is obvious, therefore, that physicians licensed by the Medical Examining Board have full authority to treat the sick, whereas, chiropractors licensed by the Chiropractic Board have only such authority to treat the sick as authorized by the Legislature.
I conclude, on the basis of the expansive grant of authority to physicians contained in the Medical Practices Act, that a physician may properly advise or counsel a patient on whether or not continued chiropractic professional care is necessary.
While as a general proposition the Medical Practices Act permits a physician to provide advice concerning the need for chiropractic care,
 [I]t is a generally accepted principle that a physician has the duty to advise his patient to consult a specialist or one qualified in a method of treatment which the physician is not qualified to give, where he knows, or ought to that he does not have the requisite skill, knowledge, or facilities to treat the patient's ailment properly, or that the method by which he is treating the patient's ailment is not providing relief or effecting a cure. *Page 318 
Annot., 58 A.L.R.3d 590-91 (1929). This general principle is recognized in the administrative rules of the Medical Examining Board. In the rules prohibiting unprofessional conduct, such conduct is defined in Wis. Adm. Code section Med 10.02 (2)(i), to include, "[p]racticing or attempting to practice under any license when unable to do so with reasonable skill and safety to patients." Additionally, a physician is prohibited from engaging in "[a]ny practice or conduct which tends to constitute a danger to the health, welfare, or safety of patient or public." Wis. Adm. Code section Med 10.02 (2)(h). Thus, advice to a patient that chiropractic care is not needed may be prohibited in situations where a physician does not possess the skills or qualifications necessary to properly formulate such advice or where such advice may prove dangerous to the patient.
A review of the case law from throughout the country, however, reveals court decisions dealing with both the obligation of a physician to refer a patient to another physician and with the obligation of a limited medical professional to refer a patient to a physician. Courts have held that a general practitioner is required to advise a patient to consult a specialist. Wilson v.Corbin, 241 Iowa 593, 41 N.W.2d 702 (1950); Morgan v. Engles,13 Mich. App. 656, 164 N.W.2d 702 (1968); Benson v. Dean,232 N.Y. 52, 133 N.E. 125 (1921); and Osborne v. Frazor, 58 Tenn. App. 15,425 S.W.2d 768 (1968). Chiropractors have been held liable for failure to advise a patient to consult a physician. Salazar v.Ehmann, 505 P.2d 387 (Colo.App. 1972); Janssen v. Mulder,232 Mich. 183, 205 N.W. 159 (1925); Ritter v. Sivils, 206 Or. 410,293 P.2d 211 (1956); and Ison v. McFall, 55 Tenn. App. 326,400 S.W.2d 243 (1964). I have not found any cases holding a physician liable for failure to advise a patient to consult a chiropractor.
You also ask whether a physician's advice to a patient concerning the need for continued chiropractic care would be considered the practice of chiropractic. The answer is no. Section 446.01 (2), Stats., defines the practice of chiropractic as follows:
 (a) To examine into the fact. condition, or cause of departure from complete health and proper condition of the human; to treat without the use of drugs as defined in s. 450.06 or surgery; to counsel; to advise for the same for the restoration and preservation of health or to undertake, offer, advertise, *Page 319 
announce or hold out in any manner to do any of the aforementioned acts, for compensation, direct or indirect or in expectation thereof; and
 (b) To employ or apply chiropractic adjustments and the principles or techniques of chiropractic science in the diagnosis, treatment or prevention of any of the conditions described in s. 448.01 (10).
A physician's advice concerning the need for continued chiropractic care obviously does not fall under the definition of chiropractic practice contained in see. 446.01 (2)(b), Stats. That section requires the employment or application of "chiropractic adjustments." This phrase is a term of art in the chiropractic field, see, e.g., its use in Wis. A.D. Code sectionChir 3.02 (1). It is intended to specifically cover bodily manipulations performed by the chiropractic professional, see Wis. Adm. Code section Chir 3.02 (1) ("chiropractic adjustments" are performed to correct disease-causing interferences with normal nerve transmission). But such advice may well meet that part of the definition of chiropractic set forth in sec. 446.01
(2) (a), Stats. However, as discussed above, such physician's advice also falls clearly within the definition of the practice of medicine and surgery under see. 448.01 (9) (a), Stats.
At the heart of the issue you raise is the fact that there is clearly an overlap between the substantial statutory authority granted to physicians and the more limited authority given chiropractors to advise patients. Compare sec. 446.01 (2) (a), Stats., with sec. 448.01 (9)(a), Stats.; see sec. 446.01 (2)(b), Stats., which authorizes chiropractors to diagnose, treat, or prevent any conditions described in sec. 448.01 (10), Stats., which defines sicknesses treated by physicians and surgeons.
Though there are not any court decisions concerning the chiropractor/physician situation, courts have had occasion to deal with the issue of overlapping professional services in other areas. The most litigated dispute seems to be between architects and engineers. In these cases, the courts have generally held that:
 [W]here either a licensed architect or a licensed engineer performed services which could properly be regarded as within the reach of the statute licensing his profession and also within the *Page 320 
statute licensing the other profession, he performed such services under the statute under which he was licensed and was not affected by the fact that they came incidentally within the purview of the other licensing statute.
5 Am. Jur. 2d Architects sec. 3.
It is my opinion that a similar line of reasoning must be applied to chiropractors and physicians. In giving advice to patients, there is an overlap between what may properly be done by a chiropractor and a physician under their respective grants of statutory authority. In my view, a physician is given the latitude to perform services within his or her authority, whether those services overlap with professional services properly performed by a chiropractor, or other health care professional.
To find otherwise would be to place unreasonable restraints on the practice of medicine. As summarized by the court in Smith v.American Packing Provision Co., 102 Utah 351, 130 P.2d 951, 955
(1942), "the mere fact that a licensed profession extends in some degree into the field of some other licensed occupation, does not require the licensee to have a license in each of the fields into which his profession may overlap, unless the statutes impose such requirement." Our statutes impose no such requirement. It is therefore my opinion that physicians may advise their patients whether or not continued chiropractic care is necessary. By so doing, physicians are not engaging in the unauthorized practice of chiropractic.
BCL:DDS